## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

| | |
|---|---|
| BARBARA J. KEMP,<br>and TIJUANNA HALL,<br>on behalf of plaintiffs and a class,<br><br>                Plaintiffs,<br><br>      vs.<br><br>TOWER LOAN OF MISSISSIPPI, LLC,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)  Case No. 3:15 cv 499 CWR-LRA<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.  Plaintiffs Barbara J. Kemp and Tijuanna Hall bring this action to secure redress for violations of the Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"), as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), and the Dodd-Frank Wall Street Reform and Consumer Protection Act, and implementing Regulation Z, 12 C.F.R. part 1026.

### JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction under 15 U.S.C. §1640 and 28 U.S.C. §1331.

3.  Venue is proper because defendant is headquartered here.

### PARTIES

4.  Plaintiff Barbara J. Kemp resides in a home which she owns in Biloxi, MS.

5.  Plaintiff Tijuanna Hall resides in a home which she owns in Gulfport, MS.

6.  Defendant Tower Loan of Mississippi, LLC is a limited liability company organized under Mississippi law with its principal place of business in Flowood, MS. Its registered agent and office is John E. Tucker, 406 Liberty Park Court, P.O. Box 32000, Flowood, MS 39232.

7.      Defendant Tower Loan of Mississippi, LLC is engaged in the business of extending credit to consumers in exchange for interest and finance charges.

8.      Defendant Tower Loan of Mississippi, LLC extends credit to more than 26 consumers each year.

9.      Defendant Tower Loan of Mississippi, LLC is a creditor as defined in TILA and Regulation Z.

## FACTS RELATING TO PLAINTIFF KEMP

10.     On August 15, 2014, plaintiff Barbara J. Kemp obtained a loan from defendant Tower Loan of Mississippi, LLC, secured by her home.

11.     The loan was entered into for personal, family or household purposes, i.e., housing, and not for business purposes.

12.     The loan had an amount financed of $26,648.12 and an annual percentage rate of 18.67%.

13.     In connection with the August 15, 2014 loan, plaintiff Barbara J. Kemp received or signed documents including:

    a.      A good faith estimate (Exhibit A) and preliminary TILA disclosure (Exhibit B);

    b.      A settlement statement (Exhibit C);

    c.      A Truth in Lending statement (Exhibit D);

    d.      One copy only of a notice of right to cancel (Exhibit E);   .

    e.      A deed of trust (Exhibit F).

14.     The August 15, 2014 loan represented the latest in a series of loans which Tower Loan of Mississippi, LLC had made to plaintiff Barbara J. Kemp, each refinancing the prior loan.  Prior loans were made on:

    a.      July 5, 2005 (Exhibit G);

    b.      July 14, 2006 (Exhibit H);

2

  c.  November 3, 2008 (Exhibit I);

  d.  December 18, 2009 (Exhibit J);

  e.  November 4, 2011 (Exhibit K).

  15.  The August 15, 2014 loan was subject to HOEPA because of its annual percentage rate. As amended by Dodd-Frank, HOEPA applies to a "high-cost mortgage," which includes (a) a first mortgage with an APR more than 6.5 percent above the "average prime offer rate"; (b) a first mortgage with an APR that exceeds the "average prime offer rate" by 8.5 percent if the dwelling is personal property (*e.g.*, a mobile home) and the transaction is for less than $50,000; or (c) a junior mortgage with an APR more than 8.5 percent above the average prime offer rate. 15 U.S.C. §1602(bb) (formerly (aa)).

  16.  On August 15, 2014, the applicable "average prime offer rate" published by the Federal Financial Institutions Examination Council was 3.96%.

  17.  HOEPA and implementing regulations require special disclosures for any loan to which HOEPA applies. 15 U.S.C. §1639.

  18.  These disclosures include a conspicuous statement, furnished 3 business days before the consummation of the transaction, that:

  a.  "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application";

  b.  "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan"; and

  c.  The annual percentage rate and the amount of the regular monthly payment.

  19.  These disclosures were not properly made. The disclosure defendants provided to Kemp did not contain the required warnings in "conspicuous" font sizes, but instead the entire notice was printed in a small font size, with the most conspicuous writing on the document

actually pertaining to another subject altogether – the right to obtain an appraisal. Exhibit U  In addition, prior to the date defendants gave Kemp the disclosure, it had her sign a contradictory disclosure confirming her "intent to proceed" with the transaction, which overshadowed and contradicted the required disclosure. Exhibit V

20.     HOEPA and implementing regulations also prohibit any prepayment penalty.  15 U.S.C. §1639(c).

21.     The August 15, 2014 loan provided for a prepayment penalty.  While the TILA disclosure contained the qualification that it did not apply "if preempted by federal law," HOEPA does not contemplate providing for a prepayment penalty, which has the effect of deterring the consumer from refinancing at a better rate, and requiring the consumer to analyze the intricacies of "federal law" to determine if it is enforceable.

22.     HOEPA and implementing regulations provide (15 U.S.C. §1639(h)) that "A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages refered to in section [1602(bb)] of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment."

23.     On information and belief, Tower Loan of Mississippi, LLC engages in a pattern or practice of extending credit under HOEPA loans without regard to the consumers' ability to repay.

24.     Under 15 U.S.C. §1639(n), "Any mortgage that contains a provision prohibited by this section shall be deemed a failure to deliver the material disclosures required under this subchapter, for the purpose of section 1635 of this title," granting extended rescission rights.

25.     Under 15 U.S.C. §1639(u)(1), "A creditor may not extend credit to a consumer under a high-cost mortgage without first receiving certification from a counselor that is approved by the Secretary of Housing and Urban Development, or at the discretion of the Secretary, a State housing finance authority, that the consumer has received counseling on the advisability of

4

the mortgage. Such counselor shall not be employed by the creditor or an affiliate of the creditor or be affiliated with the creditor."

26.     On information and belief, defendant made the August 15, 2014 loan without such certification.

27.     The lending practices complained of represent standard policies and practices on the part of defendant.  Plaintiff Barbara J. Kemp was not singled out for treatment different than other borrowers from defendant.

<u>FACTS RELATING TO PLAINTIFF HALL</u>

28.     On October 28, 2014, plaintiff Tijuanna Hall obtained a loan from defendant Tower Loan of Mississippi, LLC, secured by her home.

29.     The loan was entered into for personal, family or household purposes, i.e., housing, and not for business purposes.

30.     The loan had an amount financed of $24,556.20 and an annual percentage rate of 18.04%.

31.     In connection with the October 28, 2014 loan, plaintiff Tijuanna Hall received or signed documents including:

        a.     A settlement statement (<u>Exhibit L</u>);

        b.     A Truth in Lending statement (<u>Exhibit M</u>);

        c.     One copy only of a notice of right to cancel (<u>Exhibit N</u>);

        d.     A deed of trust (<u>Exhibit O</u>).

32.     The October 28, 2014 loan represented the latest in a series of loans which Tower Loan of Mississippi, LLC had made to plaintiff Tijuanna Hall, each refinancing the prior loan. Prior loans were made on:

        a.     April 29, 2003 (<u>Exhibit P</u>);

        b.     Feb. 22, 2008 (<u>Exhibit Q</u>);

        c.     March 17, 2009 (<u>Exhibit R</u>);

    d.       August 19, 2010 (Exhibit S);

    e.       November 4, 2011 (Exhibit T).

33.     The October 28, 2014 loan was subject to HOEPA because of its annual percentage rate.. As amended by Dodd-Frank, HOEPA applies to a "high-cost mortgage," which includes (a) a first mortgage with an APR more than 6.5 percent above the "average prime offer rate"; (b) a first mortgage with an APR that exceeds the "average prime offer rate" by 8.5 percent if the dwelling is personal property (*e.g.,* a mobile home) and the transaction is for less than $50,000; or (c) a junior mortgage with an APR more than 8.5 percent above the average prime offer rate. 15 U.S.C. §1602(bb) (formerly (aa)).

34.     On October 28, 2014, the applicable "average prime offer rate" published by the Federal Financial Institutions Examination Council was 3.81%.

35.     These disclosures were not properly made. Instead of having Hall sign an appropriate disclosure three business days prior to the closing, defendant had Hall sign a defective disclosure. Exhibit W  The disclosure in question did not contain the required warnings in "conspicuous" font sizes, but instead the entire notice was printed in the same small font size, with the most conspicuous writing on the document actually pertaining to another subject altogether – the right to obtain an appraisal. In addition, defendant had plaintiff sign a document which conflicted with Exhibit W on that same date, namely Notice of Intent to Proceed with the transaction.  Exhibit X The language in Exhibit X had the effect of negating the language in Exhibit L.

36.     The October 28, 2014 loan provided for a prepayment penalty. While the TILA disclosure contained the qualification that it did not apply "if preempted by federal law," HOEPA does not contemplate providing for a prepayment penalty, which has the effect of deterring the consumer from refinancing at a better rate, and requiring the consumer to analyze the intricacies of "federal law" to determine if it is enforceable.

37.     Under 15 U.S.C. §1639(n), "Any mortgage that contains a provision prohibited

by this section shall be deemed a failure to deliver the material disclosures required under this subchapter, for the purpose of section 1635 of this title," granting extended rescission rights.

38.    The lending practices complained of represent standard policies and practices on the part of defendant.  Plaintiff Tijuanna Hall was not singled out for treatment different than other borrowers from defendant.

**COUNT I – HOEPA/ TILA CLASS CLAIM**

39.    Plaintiffs incorporate paragraphs 1-38.

40.    Defendant is liable for damages as specified in 15 U.S.C. §1640, including:

      a.    "such amount as the court may allow," not exceeding "the lesser of $1,000,000 or 1 per centum of the net worth of the creditor";

      b.    "an amount equal to the sum of all finance charges and fees paid by the consumer".

**CLASS ALLEGATIONS**

41.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

42.    The class consists of (a) all individuals (b) who obtained real property secured loans from defendant (c) on or after a date three years (15 U.S.C. §1640(e)) prior to the filing of this action (d) which loan was either (i) a first mortgage with an APR more than 6.5 percent above the "average prime offer rate"; (ii) a first mortgage with an APR that exceeds the "average prime offer rate" by 8.5 percent if the dwelling is personal property (*e.g.,* a mobile home) and the transaction is for less than $50,000; or (iii) a junior mortgage with an APR more than 8.5 percent above the "average prime offer rate."

43.    On information and belief, based on a survey of real property records in selected Mississippi counties, there are more than 40 class members, and the  class is so numerous that joinder of all members is not practicable.

44.    There are questions of law and fact common to the class members, which

7

common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.  Whether defendant's loans are subject to HOEPA;

b.  Whether defendant's disclosure form contained the required statements in a conspicuous manner;

c.  Whether defendant's disclosures were contradicted and overshadowed by a Notice of Intent to Proceed;

d.  Whether defendant includes prohibited prepayment penalties in loans subject to HOEPA;

e.  Whether defendant engages in a pattern or practice of extending credit under HOEPA loans without regard to the consumers' ability to repay;

f.  Whether defendant makes HOEPA loans without first receiving certification from an approved counselor that the consumer has received counseling on the advisability of the mortgage.

45.   Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

46.   Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

47.   A class action is superior for the fair and efficient adjudication of this matter, in that:

a.  Individual actions are not economically feasible.

b.  Members of the class are likely to be unaware of their rights;

c.  Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendant for:

8

    i.     Statutory damages;

    ii.    Attorney's fees, litigation expenses and costs of suit;

    iii.   Such other and further relief as the Court deems proper.

### COUNT II – HOEPA/ TILA – INDIVIDUAL CLAIM

48.    Plaintiffs incorporates paragraphs 1-38.

49.    Plaintiffs are entitled to rescind the loans of August 15, 2014 and October 28, 2014.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against defendant for:

    i.     Rescission;

    ii.    Attorney's fees, litigation expenses and costs of suit;

    iii.   Such other and further relief as the Court deems proper.

_____

Jason Graeber

Jason Graeber
MSB 101267
2462 Pass Road
Biloxi, MS 39531
(228) 207-7117
(228) 207-8634 (FAX)
jason@jasongraeberlaw.com

admission pro hac vice to be applied for

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

9

**JURY DEMAND**

Plaintiffs demand trial by jury.

_____
Jason Graeber

T:\31464\Pleading\First Amended Complaint_Pleading.WPD

10

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

_____
Jason Graeber

## DOCUMENT PRESERVATION DEMAND

Each plaintiff hereby demands that defendant take affirmative steps to preserve all recordings,  data, documents, and all other tangible things that relate to plaintiff, the events described herein,  any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very  relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, each plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

Jason Graeber

12