**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BARBARA J. KEMP**                                                **PLAINTIFFS**
**and TIJUANNA HALL**

**VS.**                                             **NO. 3:15-CV-499-CWR-LRA**

**TOWER LOAN OF MISSISSIPPI, LLC
D/B/A TOWER LOAN OF BILOXI, and
FIRST TOWER LOAN, LLC D/B/A
TOWER LOAN OF EAST GULFPORT**                    **DEFENDANTS**

**ORDER OF FINAL APPROVAL OF SETTLEMENT,
AUTHORIZING SERVICE AWARDS, AND GRANTING
<u>APPLICATION FOR ATTORNEYS' FEES AND EXPENSES</u>**

On November 27, 2017, Plaintiffs and Class Counsel filed their Motion for Final Approval of Class Settlement (Dkt. No. 80; the "Motion"), seeking Final Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"; capitalized terms that are not defined herein have the meanings given in the Agreement) with Tower Loan of Mississippi, LLC ("TLM") and First Tower Loan, LLC ("FTL"; TLM and FTL are referred to collectively herein as "Tower"). The Settlement Agreement and Release contains provisions authorizing service awards to the named plaintiffs. Class counsel filed a separate petition for attorney's fees. Dkt. No. 81. Counsel supported each motion with a separate memorandum. *See* Dkt. Nos. 81, 83 and 85. On December 18, 2017, a Final Approval Hearing was held pursuant to the Court's Preliminary Approval Order dated August 8, 2017. *See* Dkt. No. 79. The Court reviewed all of the filings related to the Settlement and heard from counsel for both parties.

The Court confirms that it has jurisdiction over this matter and the parties to it. After carefully considering the parties' presentations, the Court concludes that the Settlement constitutes a satisfactory result for the Settlement Class under the circumstances and challenges

presented by the Action. The Court specifically finds that the Settlement: (i) is fair, reasonable, and adequate; (ii) is a satisfactory compromise of the Settlement Class Members' claims; and (iii) fully complies with FED. R. CIV. P. 23(e). The Court therefore grants Final Approval to the Settlement, certifies the Settlement Class, and awards the fees and costs requested by Class Counsel, as well as the requested Service Awards for the representative Plaintiffs.

## BACKGROUND

The present evidentiary record is more than adequate for the Court to consider the fairness, reasonableness, and adequacy of the Settlement. A fundamental question is whether the district judge has sufficient facts before him to evaluate and intelligently and knowledgeably approve or disapprove the settlement. *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974)). In this case, the Court clearly has such facts before it in considering the Motion, including the evidence and opinions of Class Counsel.

## A.    Factual and Procedural Background

1.      On July 8, 2015, Plaintiffs Barbara J. Kemp and Tijuanna Hall filed a class action complaint in the United States District Court for the Southern District of Mississippi against TLM in which they asserted class and individual claims based on alleged violations of the Truth in Lending Act, 15 U.S.C. §1601 *et seq.*, as amended, and implementing Regulation Z, 12 C.F.R. Part 1026. Plaintiffs sought inter alia, monetary damages, rescission, and attorney's fees and costs. Plaintiffs also moved for class certification against TLM.

2.      On September 30, 2015, TLM filed its answer to the Action, denying any and all wrongdoing and liability whatsoever and asserting various affirmative defenses.

3.      Following a telephonic conference held on January 15, 2016, this Court denied Plaintiffs' motion to certify class without prejudice and granted Plaintiffs leave to amend their complaint.  Plaintiffs filed their first amended complaint that same day.

4.      TLM answered the first amended Complaint, and the Parties proceeded to conduct discovery.

5.      On June 24, 2016, the Parties participated in a court-ordered settlement conference with United States Magistrate Judge Linda R. Anderson.  Although an agreement was not reached at the conclusion of this conference, the Parties agreed to continue settlement discussions with the assistance of Magistrate Judge Anderson.

6.      On August 9, 2016, the Parties participated in a second settlement conference with Magistrate Judge Anderson.  An agreement was not reached, but it was agreed that the deadline for Plaintiffs to amend their complaint could be extended.

7.      Following the settlement conference, Magistrate Judge Anderson entered an order that extended the deadline to amend pleadings until August 26, 2016 and that stayed all remaining deadlines until further order of the Court.

8.      On September 7, 2016, Plaintiffs filed a second amended complaint that added FTL as a defendant.  FTL and TLM each answered the second amended complaint by denying all wrongdoing and liability and by asserting various affirmative defenses.

9.      The Parties continued to pursue settlement of the Action and, at the request of counsel, Magistrate Judge Anderson conducted a third settlement conference on December 21, 2016.  The case did not settle, but counsel agreed to continue to confer.

10.     In the absence of a settlement, a telephonic scheduling conference was held before Magistrate Judge Anderson on January 12, 2017. Thereafter, on January 19, 2017, the Court issued its scheduling order on class certification.

11.     After further discussions, the Parties reached an agreement in principal to settle the Action in its entirety without any admission of liability, with respect to all claims of the Settlement Class and all claims of the individual Plaintiffs, subject to the drafting and execution of a mutually acceptable final settlement agreement.

12.     Following further negotiating at arms-length, the Parties finalized the Agreement, which the Parties intend to bind Plaintiffs, Tower, and all members of the Settlement Class who do not request on a timely basis in accordance with the terms of a Court-approved notice to be excluded from the Settlement. In satisfaction of Fed. R. Civ. P. 23(e)(3), a copy of the Agreement was provided to the Court with the motion seeking the entry of the Preliminary Approval Order.

13.     The Court granted the motion seeking the entry of the Preliminary Approval Order and entered the Preliminary Approval Order on August 8, 2017. *See* Dkt. No. 79.

14.     In accordance with the Court's Preliminary Approval Order, on September 20, 2017, actual notice was sent by first class mail to all Settlement Class Members by Class-Settlement.com (the "Class Administrator"). A total of 405 separate loans are part of the Settlement Class. The Class Administrator mailed the notice separately to each co-borrower for each loan, for a total of 576 notices mailed. Of the notices initially mailed, 17 were returned by the post office, 13 of the returned notices were successfully redelivered to new addresses. One class member has been reported as deceased.

15.     In accordance with the Court's Preliminary Approval Order, the Class Administrator established a toll-free telephone number to answer questions from Settlement Class Members.

16.     In satisfaction of Fed. R. Civ. P. 23(e)(2), counsel for the Parties timely appeared before the Court on December 18, 2017 for the Final Approval Hearing to determine whether (i) the Action satisfies the applicable prerequisites for class action treatment; (ii) the proposed settlement is fundamentally fair, reasonable, adequate; and (iii) the proposed settlement is in the best interest of the Settlement Class Members and should be approved by the Court.

17.     Settlement Class Members were given an opportunity to object to the settlement.  No Settlement Class Members objected to the Settlement. The Settlement Class Members who made valid and timely requests for exclusion are excluded from the class and settlement and are not bound by this Order.  Only two (2) Settlement Class Members validly and timely requested exclusion.

**B.     <u>Summary of the Settlement Terms</u>**

The Settlement's terms are detailed in the Agreement (Dkt. No. 78-1). The following is a summary of certain material terms.  This summary is merely an abbreviated synopsis and is not a substitute for the actual terms of the Agreement.

**1.     The Settlement Class**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> All Borrowers of any Mortgage Loan with Tower that has a Date of Loan from June 1, 2013 through and including November 3, 2015.

Agreement ¶ 54; *also* Preliminary Approval Order (Dkt. No. 79).

**2.     Settlement Consideration for the Benefit of the Class**

Under the Settlement, Tower timely made its initial deposit into an Escrow Account following this Court's Preliminary Approval. Agreement ¶ 73. That deposit created the Settlement Fund, which will be used to pay: (i) checks to certain Settlement Class Members in the specific cases described in Paragraph 56 of the Agreement; (ii) the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses; (iii) the Court-ordered Service Awards to the Class Representatives; (iv) any residual distribution as set forth in Section XIII of the Agreement; (v) any costs of settlement administration other than those paid by Tower; and (vi) additional fees, costs and expenses not specifically enumerated in the Agreement, subject to approval of Class Counsel and Tower. Agreement ¶ 75. Tower is responsible for paying all fees, costs, charges and expenses incurred by the Settlement Administrator. Agreement ¶ 59.

Settlement Class Members do not have to submit claim forms or take any other affirmative steps to receive relief under the Settlement. Tower will re-amortize each Settlement Class Member's Mortgage Loan. Agreement ¶¶ 56, 76. Within 157 days after the Effective Date, the Settlement Administrator will distribute checks to all Settlement Class Members entitled to a cash payment. Agreement ¶ 80.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund payments. Agreement ¶ 81.

The Agreement also provides a mechanism for distributing any funds remaining in the Settlement Fund more than one year plus 30 days after the date the Settlement Administrator mails the first Settlement Fund Payments. Agreement ¶ 82. The Parties will jointly file a proposed plan with the Court for distributing the funds to a nonprofit organization that promotes financial literacy in a way

that is consistent with well-regarded guidance on those types of supplemental distributions. *Id.* The Court has the discretion to approve the plan or disregard it as it deems fit. *Id.*

### 3. Additional Relief

Tower will pay all fees, costs, charges, and expenses incurred by the Settlement Administrator in connection with the Notice Program. Agreement ¶ 59.

### 4. Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members shall automatically be deemed to have fully and irrevocably released and forever discharged Tower from claims relating to the subject matter of the Action as fully described and defined in Section XIV of the Agreement.

## DISCUSSION

The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) ("[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."). "The recommendation by Plaintiff's counsel and the good faith bargaining between the parties . . . militates heavily in favor of approving the settlement." *Murillo v. Texas A & M Univ. Sys.*, 921 F. Supp. 443, 446 (S.D. Tex. 1996). The Court does not "substitute its business judgment for that of the parties; the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary v. Am. Sav. and Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977) (citation omitted).

As explained below, this Settlement is more than sufficient under Rule 23(e). It includes a Rate Reduction that is projected to provide a total reduction of approximately $610,000 in precomputed finance charges to Settlement Class Members (Agreement ¶ 56), plus amounts that Tower has paid or will pay for the fees and costs associated with the Notice program and Settlement administration. Agreement ¶ 59. Settlement Class Members will receive their recovery as a matter of course, without needing to take any action, because Tower will implement the Rate Reductions on all Mortgage Loans in the Settlement Class. Agreement ¶¶ 56, 76.

### 1. The Court's Exercise of Jurisdiction Is Proper

In addition to having personal jurisdiction over Plaintiffs, the Court also has personal jurisdiction over all Settlement Class Members because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)).

### a. The Best Notice Practicable Was Provided to the Settlement Class

The Notice program consisted of a direct mailing of the Class Notice to all identifiable Settlement Class Members. The Class Notice program was properly and timely completed. *See* Declaration of Settlement Administrator at Dkt. No. 81-1. The Settlement Administrator received the data files that identified the names and last known addresses of all identifiable Settlement Class Members, ran the addresses through the National Change of Address Database, and mailed letters that contained the Class Notice to each Settlement Class Member, including separate mailings to each co-borrower, for a total of 576 mailings. *Id*. Of the notices initially mailed, 17 were returned by the post office, 13 of the returned notices were successfully redelivered to new addresses. One Settlement Class Member has been reported as deceased. *Id*. In sum, it was the

best practicable notice under the circumstances and that it constitutes due and sufficient notice to all persons entitled to notice of the class action settlement.

### b. The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights

The Court-approved Class Notice satisfied due process requirements because it described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Class Notice, among other things, defined the Settlement Class and described the release provided to Tower under the Settlement as well as the structure, estimated value and proposed distribution of the Settlement benefits. The Class Notice also informed Settlement Class Members of: their right to opt-out and object and the procedures for doing so; the time and place of the Final Approval Hearing; the binding effect that a class judgment would have on them unless they opted out; and where they could get more information. Further, the Class Notice described Class Counsel's intention to seek attorneys' fees and expenses of $150,000 and Service Awards of $5000 to each Class Representative.

The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

### 2. The Settlement Is Fair, Adequate, Reasonable, and Approved Under Rule 23

In deciding whether to approve the Settlement, the Court analyzes whether it is "fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton*, 599 F.2d at 1330); *see also In re Chicken Antitrust Litig.*, 669 F.2d at 238. A settlement is fair, reasonable, and adequate when "the

interests of the Plaintiff Settlement Class, as a whole, will be better served if the claims against these Defendants are resolved by the Settlement rather than pursued." *In re Granada P'ship Secs. Litig.*, 803 F. Supp. 1236, 1244 (S.D. Tex. 1992); *see also In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 WL 222177, at *3 (E.D. La. 1995).

The Fifth Circuit has identified six (6) factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

(1)     the existence of fraud or collusion behind the settlement;

(2)     the complexity, expense, and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the probability of the plaintiffs' success on the merits;

(5)     the range of possible recovery; and

(6)     the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983)); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194-95 (5th Cir. 2010).

### a.     There Was No Fraud or Collusion

The Court readily concludes that there was no fraud or collusion behind this Settlement. Magistrate Judge Anderson conducted a series of three settlement conferences with the Parties and monitored the progression of their months of negotiations.  *See, e.g.*, *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 527 (N.D. Miss. 2003) ("The court was intimately involved in the long-running and frequently contentious settlement negotiations between the parties in

this action and has no reason to believe that fraud or collusion played a role in the negotiations"). There is no evidence whatsoever that the Settlement was obtained by fraud or collusion.

### b. Complexity, Expense and Likely Duration of this Litigation

The allegations and defenses in this Action are complex and litigating them is both difficult and time-consuming. This Action already has been actively litigated for two years; recovery by any means other than settlement would no doubt require additional years of litigation. *See Reed*, 703 F.2d at 172 (the purpose of a class action compromise is to avoid the delay and expense of trial). The Parties believe this case would have been the subject of prolonged litigation and lengthy appeals had it not settled. The Court does not disagree.

The Settlement provides present, tangible benefits to approximately 405 Settlement Class Members, all of whom are current or former Tower customers. Dkt. No. 78-1. Considering the uncertainty of litigation and comparing that risk with the recovery afforded by way of this Settlement, along with a means to avoid protracted and expensive litigation, this factor strongly supports approval of the Settlement. *In re Shell Oil Refinery,* 155 F.R.D. 552, 563 (E.D. La. 1993).

### c. Stage of the Proceedings/Discovery

The Court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *Moore v. Halliburton Co.*, 2004 WL 2092019, *7 (N.D. Tex. Sept. 9, 2004) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3rd Cir. 2001). Prior to settling, Class Counsel conducted discovery and analyzed data that Tower produced on a random sampling of borrowers that was retrieved in accordance with the instructions and specifications of Class Counsel.

This discovery and data analysis allowed Class Counsel to better understand the merits of this Action, prepared them for the settlement conferences, and allowed them to engage in vigorous, arms-length negotiations under the direction of an experienced and well-respected Magistrate Judge who fully explored the issues in the case and helped the Parties reach the proposed Settlement. *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 146 (E.D. La. 2013), *appeal dismissed in part*, 13-30221 (5th Cir. Feb. 11, 2014).

### d. Significant Obstacles Challenge Success on the Merits

The Court also considers the likelihood and extent of any recovery from the defendants absent settlement. *Ayers v. Thompson*, 358 F.3d 356, 370 (5th Cir. 2004). Class Counsel believes there is a significant risk in this case of not prevailing due to certain defenses raised by Defendants, including, without limitation, Defendants' claim that it made adequate disclosures and that the Settlement Class Members did not suffer any actual damages as a direct result of the alleged failures to comply with HOEPA and accordingly lack standing under *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). Class Counsel concludes that case law on similar disclosure claims is mixed, and that there are no appellate level cases on the precise issues in this case. *Compare, Hamm v. Ameriquest Mortgage Co.,* 506 F.3d 525 (7th Cir. 2011), *with In re DiVotorrio,* 670 F.3d 273 (1st Cir. 2012); *Goff v. LaSalle Bank, NA,* 2010 WL 8991929 (N.D.Ala. Nov. 30, 2010).

On the standing and actual damage issue, district courts recently have reached conflicting conclusions in attempting to interpret the *Spokeo* decision, which has resulted in mixed decisions among the circuits. *See e.g., Gubala v. Time Warner Cable, Inc.,* 846 F.3d 909 (7th Cir. 2017); *Lyshe v. Yale R. Levy, et al,* 2017 WL 1404182 (6th Cir. 2017); *Church v. Accretive Health, Inc*., No. 15-15708, 2016 WL 3611543 (11th Cir. 2016); *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016). Of note is a large class judgment that was recently reversed on the issues of standing.

*Dreher v. Experian Information Solutions, LLC,* 2017 WL 1948916 (4th Cir. 2017); *see also Cedric Chan v. Sutter Health Sacramento Sierra Region*, No. LA CV15-02004 JAK, 2016 WL 7638111 (C.D. CA.), at *9 (June 2016) (*Spokeo* defense that Plaintiff lacked standing to pursue a consumer class action was a consideration that provided support for a finding that the terms of the class action settlement were reasonable). Given the risk of an adverse result, the Court finds that this factor also weighs in favor of finding that the proposed Settlement is fair and adequate to the Settlement Class Members.

### e.     The Range of Possible Recovery

In determining whether a settlement is fair given the potential range of recovery, the Court is guided by "[t]he fact that a proposed settlement . . . only amount[s] to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974)). Indeed, "a satisfactory settlement . . . could . . . amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* (quoting *City of Detroit*, 495 F.2d at 455 n.2). This is because a settlement must be evaluated "taking into account the uncertainty and risks involved in litigation" and "in light of the strength of the claims and possible defenses." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 727 (E.D. La. 2008).

Under the proposed settlement, Defendants will provide an interest rate reduction of 1.254% (the "Rate Reduction") on the Settlement Class Members' Mortgage Loans. Agreement ¶ 56. For Settlement Class Members with open Mortgage Loans, Defendants will re-amortize those loans with the Rate Reduction from the Date of Loan through the last scheduled payment date, and will provide each Settlement Class Member with a redisclosure of the resulting finance charges,

total of payments and monthly payment amount. *Id.* If the monthly payments already made on the open Mortgage Loan would be sufficient to pay off the loan when the loan is re-amortized at the reduced interest rate, then the loan balance will be reduced to zero. *Id.* If a Settlement Class Member with an open Mortgage Loan has overpaid after the Rate Reduction is made, overpayments will first be applied to reduce to zero the Settlement Class Member's other debt with Defendants, and the amount of any remaining overpayments will be paid to the Settlement Class Member by check. *Id.*

For Settlement Class Members with paid-off Mortgage Loans, Defendants also will re-amortize those loans with the Rate Reduction. Overpayments will first be applied to reduce to zero the Settlement Class Member's deficits and other debt with Defendants, and the amount of any remaining overpayments will be paid to the Settlement Class Member by check. *Id.*

The Rate Reductions are projected to provide a total reduction of approximately $610,000 in precomputed finance charges to the Settlement Class Members; provided that, if the loan is paid off prior to the last scheduled payment date the Settlement Class Member will receive no further Rate Reduction or other benefit after the payoff. Dkt. No. 78-1, p. 45. There are approximately 405 Settlement Class Members, so the average reduction in precomputed finance charges is projected at approximately $1,506 per Settlement Class Member. Dkt. No. 78, p. 7.

In contrast to the benefits provided by the Settlement, the range of possible recovery if this action were to be litigated is not certain. According to Class Counsel, in an individual action, a person bringing a successful suit under HOEPA may recover (i) any actual damages suffered; (ii) an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material, and (iii) could request rescission of the loan. In order to rescind his or her loan, a consumer would have to be in a position to pay off the

remaining loan balance. In a class action, the maximum possible recovery is (i) any actual damages suffered by the class members and (ii) statutory damages of not more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor, unless the creditor demonstrates that the failure to comply is not material. Dkt. No. 78, p. 7-8. Plaintiffs contend that in a HOEPA case, the class members can also recover an amount equal to the sum of all finance charges and fees paid, although Defendants do not agree. In setting the statutory damage award, the Court, in its discretion, may award anything from $0 up to the maximum amount to a prevailing party. In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. 15 U.S.C. § 1640(a). Defendants argue that the application of these factors to the facts of this case weighs heavily in favor of no award. In either an individual case or a class action, the person bringing the suit also can recover attorney's fees and the expenses of prosecuting the suit, if it is successful. *Id.* In light of the many uncertainties surrounding the range of Plaintiffs' possible recovery and the possibility of no recovery whatsoever, the benefits provided by the Settlement are, in comparison, fair, adequate and reasonable.

### f. The Opinions of Class Counsel, the Class Representatives, and Absent Class Members

"The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)). Class Counsel believe that this Settlement deserves Final Approval (Dkt. No. 78), and the Court agrees. Class Counsel has stated to the Court in briefs, and has reiterated

in the hearing before the Court, that counsel "believes the Settlement is fair because the Settlement provides a significant amount of compensation to the Settlement Class Members" and that "there is a significant risk in this case of not prevailing due to certain defenses raised by Defendants… ." Dkt. No. 78, p. 8. The Court notes that only two (2) Settlement Class Members timely requested to be excluded from the Settlement, and no Settlement Class Members timely objected to the Settlement. *See* Declaration of Settlement Administrator at Dkt. No. 81-1; *see also In re Oil Spill by Oil Rig Deepwater Horizon*, 2013 WL 144042, at *39 ("one indication of the fairness of a settlement is the lack of or small number of objections"); *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, *5 (S.D. Tex. May 7, 2007) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 305 (S.D. Miss. 2014) (same). Given the opinion of Class Counsel, the absence of objectors, and only two requests to opt-out, this factor supports final approval of the Settlement.

### 3.      The Settlement Class

This Court has previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action for settlement purposes. *See* Dkt. No. 79. The Court confirms its findings that: (a) the Settlement Class Members are numerous and are located in at least two states such that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the representative Plaintiffs are typical of the claims of the Settlement Class; (d) the representative Plaintiffs and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

The individuals listed in Exhibit A to the Final Judgment being entered contemporaneously herewith timely elected to opt out of the Settlement. The Court therefore finds and decrees that they are not part of the Settlement Class, are not bound by the Settlement or release contained therein, and will not receive any benefits or distribution from the Settlement Fund.

**4.      The Application for Service Awards to the Class Representatives Is Approved**

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Altier v. Worley Catastrophe Response, LLC*, 2012 WL 161824, *15 (E.D. La. Jan. 18, 2012) (quoting *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 333 n.65 (3rd Cir. 2011)). "It is not unusual for a court to make an 'incentive award' to named plaintiffs because of their sacrifices in pursuit of litigation on behalf of the class." *Cook v. Howard*, 2013 WL 943664, *3 n.4 (S.D. Miss. Mar. 11, 2013) (quoting *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503-04 (N.D. Miss. 1996)). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., McClain v. Lufkin Indus., Inc.*, 2010 WL 455351, *24 (E.D. Tex. Jan. 15, 2010) (granting "named Plaintiffs, Class Representatives, and Class Members . . . individual Participation Awards" amounting to a "total of $134,000" divided among "twenty-two individuals"); *In re Catfish Antitrust Litig.*, 939 F. Supp. at 504 ("approving incentive awards of $10,000 to each of the four named plaintiffs"); *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) ("approving incentive awards of $25,000 to each of two named plaintiffs"). The amount requested by Plaintiffs is identical to an award recently approved in the settlement of a class action that was litigated in the Southern District of Mississippi. *Jenkins*, 300 F.R.D. at 306.

In determining whether to approve a service award, the relevant factors for the court's consideration include:

> 1) the risk to the class representative in commencing suit, both financial and otherwise;
>
> 2) the notoriety and personal difficulties encountered by the class representative;
>
> 3) the amount of time and effort spent by the class representative;
>
> 4) the duration of the litigation; and
>
> 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011). The Plaintiffs/Class Representatives in this Action took time off from work and traveled to Jackson to attend a settlement conference with Magistrate Judge Anderson. They also were subjected to a counterclaim by Defendants at some point in the litigation. By serving as Class Representatives, Plaintiffs gave up the opportunity to pursue larger damages in an individual case, including the remedy of rescission. *See James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727, 731 (5th Cir. 1980) (rescission is not an available remedy on a classwide basis). The amount of the proposed award to Plaintiffs is therefore fair and reasonable.

The Court finds that the named Plaintiffs/Class Representatives expended time and effort and made personal sacrifices in representing the Settlement Class. They deserve to be compensated for such efforts on behalf of the Settlement Class. Therefore, the Court approves the requested service awards of $5,000 for each of the two (2) named Plaintiffs/Class Representatives, to be paid from the Settlement Fund.

### 5. Class Counsel's Application for Attorneys' Fees, Costs and Expenses Is Granted

Class Counsel request a fee, including costs and expenses, of $150,000 to be paid from the Settlement Fund. The Court analyzes this fee request under *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). As set forth below, after considering the *Johnson* factors, the Court concludes that Class Counsel's application for fees, costs and expenses in the amount of $150,000 will be granted.

### a. Class Counsel Efforts

It is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). Class Counsel, Edelman Combs Latturner & Goodwin, LLC and Jason Graeber, have requested $150,000.00 for attorneys' fees and costs to be paid from the Settlement Fund. The Fifth Circuit traditionally calculates reasonable attorneys' fees by using the "lodestar" method, which begins with the calculation of the reasonable number of hours expended on litigation multiplied by a reasonable hourly rate. *Turner v. Murphy Oil USA, Inc.,* 472 F.Supp.2d 830, 859 (E.D.La. 2007). "[T]he lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citations omitted). Class Counsel have submitted a fee petition with detailed billing records to the Court. Class Counsel's time and expense billing to date exceeds the $150,000 in fees and costs that they have requested.

In *Union Asset Mgmt. A.G. v. Dell, Inc.*, the Fifth Circuit "endorse[d] the district courts' . . . use of the percentage method" when calculating attorneys' fees in common fund class action cases. *Dell*, 669 F.3d at 644. When using the "percentage method . . . the court awards fees as a reasonable percentage of the common fund." *Id.* at 642; *see also Bethea v. Sprint Commc'ns Co.*,

2013 WL 228094, *3 (S.D. Miss. Jan. 18, 2013) ("adopt[ing] the percentage-of-the-fund approach" to calculate attorneys' fees in a common fund class action case).

Because TILA is a fee-shifting statute (15 U.S.C. § 1640 (a)(3)), the fees being requested by Class Counsel in this case are independent of the class relief. "This Court has substantial discretion in determining the appropriate fee percentage." *Jenkins*, 300 F.R.D. at 307. "No general rule can be articulated on what is a reasonable percentage of a common fund." *Bethea v. Sprint Commc'ns Co.*, No. 3:12-CV-322-CWR-FKB, 2013 WL 228094, at *3 (S.D. Miss. Jan. 18, 2013). Nonetheless, for comparison purposes, it is noteworthy that the requested fee award equals approximately 25% of the benefit projected to be provided to the Settlement Class Members, and this is within the range commonly approved. *See Jenkins*, 300 F.R.D. at 307 (noting that awards commonly fall between 20% and 50%); *see also Batchelder*, 246 F. Supp. 2d at 531 ("the adoption of an initial benchmark percentage of 25% is reasonable"); *In re Harrah's Entertainment, Inc.*, No. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998) (noting that "it is not unusual . . . for district courts in the Fifth Circuit to award percentages of approximately one third"); *Bethea*, 2013 WL 228094, at *4 (approving 27%).

Class Counsel undertook a difficult case, and they should be compensated in accord with their request, which is both warranted and reasonable given similar fee awards. Based on the findings below, this Court finds that Class Counsel are entitled to an award of fees and expenses in the amount of $150,000.

### b.  The *Johnson* Factors Support Awarding the Requested Fee

The Fifth Circuit's *Johnson* factors for determining a reasonable percentage to award class action counsel are:

(1)  the time and labor required;

(2)     the novelty and difficulty of the relevant questions;

(3)     the skill required to properly carry out the legal services;

(4)     the preclusion of other employment by the attorney as a result of his acceptance of the case;

(5)     the customary fee;

(6)     whether the fee is fixed or contingent;

(7)     time limitations imposed by the clients or the circumstances;

(8)     the results obtained, including the amount recovered for the clients;

(9)     the experience, reputation, and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)    the nature and the length of the professional relationship with the clients; and

(12)    fee awards in similar cases.

*Johnson*, 488 F. 2d at 717-19.

### i.     The Claims Required Substantial Time and Labor

Prosecuting and settling these claims demanded considerable time and labor. Class Counsel spent a substantial amount of time investigating the claims and interviewing potential plaintiffs to gather information about the claims alleged. This information was essential to Class Counsel's ability to analyze the loan documents at issue and potential remedies. Class Counsel also expended significant resources researching and developing the legal claims at issue.

Class Counsel served numerous written discovery requests on Defendants seeking probative documents and information. Dkt. Nos. 18, 19, 20, 68, 69, 70, 72 & 73. Tower asserted objections to certain discovery requests, the parties exchanged lengthy correspondence regarding discovery-related issues, and they held telephone conferences to resolve the discovery issues

between them.  Class Counsel also devoted extensive time and effort to researching and preparing various motions and responses.

Settlement negotiations, including three settlement conferences with Magistrate Judge Anderson which ultimately led to the Settlement, required substantial preparation, travel time, and follow-up work.  *Id*.  Moreover, after the Parties reached their Settlement in principal, several weeks of intense discussions followed concerning the specific terms of the Settlement.  *Id*. Once all discussions and drafting were completed, the Agreement was executed in May through June 2017.  Dkt. No. 78-1.

Each of the above-described efforts was essential to achieving the Settlement before the Court. It is this Court's view that the time and resources Class Counsel devoted to prosecuting and settling this Action justify the fees and expenses that are being requested.

### ii. The Statutory and Regulatory Issues Involved Were Novel and Difficult and Required Highly Skilled Attorneys

Litigation of this Action required counsel on both sides to be trained in class-action law and procedure and also in the specialized TILA/HOEPA issues presented in this case.  Class Counsel demonstrated that they possess these attributes and that their participation added considerable value to the representation of this Settlement Class.  Some of the regulatory provisions at issue in this case are relatively new.  Interpreting and applying such regulations to the facts of this case requires a high level of expertise in this area of the law.  The skill required here justifies this award.  S*ee Billitteri v. Secs. Am.*, Inc., 2011 WL 3585983, *7 (N.D. Tex. Aug. 4, 2011)

### iii. Class Counsel Assumed Considerable Risk to Pursue this Action on a Contingency Basis and Were Precluded from Other Employment as a Result

The risks facing the Plaintiffs in this case have been discussed above, in the Memorandum in Support of Motion for Preliminary Approval, and elsewhere. *E.g.*, Dkt. No. 78. There were numerous ways in which Plaintiffs could have lost this case and had zero recovery–yet they achieved a successful Settlement under the experienced guidance of Class Counsel.

Class Counsel faced a *Spokeo* standing defense, federal and state-law defenses, as well as defenses based on the language in Tower's loan documents. Dkt. No. 78, pp 8-9. The Court expresses no opinion on the merits of these arguments; however, the critical point for present purposes is that, heading into this case, Class Counsel confronted these issues without any assurances as to how the Court would rule. Class Counsel accepted the case and the risks that accompanied it. The Court believes, and holds, that the proper compensation here is $150,000.

Class Counsel prosecuted the Action entirely on a contingent fee basis. *See* Approved Class Settlement Notice ¶ 17, Dkt. No. 85-2. In undertaking to prosecute this complex class action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. The fact that Class Counsel undertook this case on a contingency fee basis is relevant to the *Johnson* analysis. *Billitteri*, 2011 WL 3585983, at *7 (finding the contingency fee arrangement of a class action "particularly relevant" to the *Johnson* analysis "considering the difficulty presented by the facts and legal questions in [such] case[s] and the very real risk of obtaining no recovery at all"); *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 618 (W.D. Tex. 2010).

Given the risks taken by Class Counsel as discussed above, and given the attorney time spent on the Action (which was time that could not be spent on non-contingency matters), the requested fee and expense award is justified.

### iv.   The Results Obtained Support the Award

The Court finds that the benefits of this Settlement are significant for Settlement Class Members.  Rather than facing more years of costly and uncertain litigation, each Settlement Class Member will receive the benefit of an immediate Rate Reduction on his or her Mortgage Loan, including Settlement Class Members with paid-off Mortgage Loans.  In addition, Tower is paying the costs of Notice and Settlement administration and also is funding the Service Awards and Class Counsel fees.

**v.      The Requested Fee Comports with Fees Awarded in Similar Cases**

The Court finds that a $150,000 fee (approximately 25% of the projected Rate Reduction benefit) is appropriate, reasonable, and comports with customary fee awards in comparable cases.  *See, e.g., Gooch* 672 F. 3d at 426.

**vi.     The Remaining *Johnson* Factors also Favor Approving the Requested Fee**

The Court finds that the remaining *Johnson* factors further support Class Counsel's fee and expense request, and so holds.  This fee is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333.  Consumer class actions present challenging legal issues that require experienced and sophisticated lawyers with expertise in this complex area of the law.  The factual and legal issues in this case compel the result required by this Order.

**<u>CONCLUSION</u>**

This Order takes notice of and incorporates by reference all documents and record evidence presented in this matter, including, but not limited to: the Settlement Agreement (Dkt. No. 78-1), the Order Preliminarily Approving Class Settlement and Certifying Settlement Class

(Dkt. No.79), the Affidavit of the Settlement Administrator (Dkt. No. 81-1), and the Fee Petition of Class Counsel (Dkt. No. 82).

For the foregoing reasons, the Court: (1) grants Final Approval to the Settlement; (2) certifies for settlement purposes only the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoints as Class Representatives the two (2) Plaintiffs identified in paragraph 18 of the Agreement; (4) appoints as Class Counsel the law firms and attorneys listed in paragraph 15 of the Agreement; (5) approves Service Awards for each of the two (2) named Plaintiffs in the amount of $5,000 each; (6) awards Class Counsel attorneys' fees, costs and expenses in the amount of $150,000; (7) directs Class Counsel, Plaintiffs, and Tower to implement and consummate the Settlement pursuant to its terms and conditions; (8) retains continuing jurisdiction over Plaintiffs, the Settlement Class, and Tower to implement, administer, consummate, and enforce the Settlement and this Final Approval Order; and (9) will separately enter Final Judgment dismissing the Action with prejudice.

**SO ORDERED AND ADJUDGED** this the 20th day of December, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE